## Turner v. Gambill.

(Decided Nov. 11, 1938.)

BACH & NOBLE, ERVINE TURNER and GRANNIS BACH for appellant.

HENRY L. SPENCER for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

William E. Gambill, who died in December, 1927, left surviving as his heirs at law, six children, namely, the appellee, Edward L. Gambill, A. L. Gambill, George W. Gambill, Elvira Rose, Lizzie Strong, and a nephew, A. L. Gambill, Jr., the son of William B. Gambill, a deceased son of William E. Gambill. There were thus seven shares in his estate.

Appellee, Edward L. Gambill, qualified as his administrator in the Breathitt circuit court and as such

administrator secured two judgments against the Hargis Bank and Trust Company, which judgments seem to have amounted to $2,814.75, on August 24, 1929, on which date the last judgment, in the administrator's favor, was rendered for $1,974.75, and by which judgment this amount of $2,814.75 was fixed as being the total amount due from the bank to the administrator under both judgments. The parties to this litigation apparently accept $2,814.75 as the correct amount. There was also a deposit of $801.63 in the Hargis Bank and Trust Company to the credit of Edward L. Gambill, administrator for sometime prior to, and on, February 5, 1930, on which date the bank closed.

On May 1, 1929, the Hargis Bank and Trust Company secured judgment against appellee, Edward L. Gambill, and George W. Gambill, for $2,600, with interest from February 28, 1927, subject to a credit of $250 as of February 28, 1927. In a later action this judgment was credited by certain sums and the amount thereof fixed at $1,864.04 as of August 24, 1929.

The Hargis Bank and Trust Company closed on February 6, 1930, and went into process of liquidation. On this day executions were issued on the judgments in favor of appellee, as administrator of William E. Gambill, and these executions were levied on property of the bank, known as the Library Property, and sale of the property was made by the sheriff on April 17, 1930, under these executions.

However, in the case of A. H. Hargis against Lee Combs, Sheriff, etc., in the Breathitt circuit court, in which J. Bryan Smith, deputy banking commissioner, in charge of the bank, was defendant on a cross-petition filed against him by William E. Gambill's administrator, on the above mentioned judgments, an order was entered on June 24, 1931, purporting to be a settlement of these judgments, which order was as follows:

"This cause came on for trial on the amended petition by cross-petition against J. Bryan Smith, Deputy Banking Commissioner, filed herein by defendant, E. L. Gambill, the same having been heard and considered on oral evidence heard in open court.

"It is adjudged by the court that the judgment rendered in this court at its special May term,

1929, in the action of Hargis Bank & Trust Company vs. G. W. Gambill, recorded in Civil Order Book 27, at page 106, etc., for the sum of $1974.75 in favor of E. L. Gambill, administrator vs. said bank is the property of the defendant, E. L. Gambill, to the extent of the amount therein adjudged, viz: the sum of $1864.04 with interest at the rate of 6% thereon from February 28, 1927, until paid and amounting at this date to the sum of $2348.68. Said judgment in favor of said Gambill, administrator against said Hargis Bank and Trust Company is now credited by said sum of $2348.68 and said judgment in favor of said Bank vs. E. L. Gambill is now paid and satisfied in full. The executions mentioned in the pleadings in this case are now by agreement of the defendant, E. L. Gambill, quashed and the levy of same and the sale made thereunder are now cancelled and held for naught. By agreement of the parties the defendant will recover of the petitioner, Breathitt County Library Board, the cost of this action and all questions in this case are now finally and fully settled and this cause is stricken from the docket and said Library Board will pay all the cost of this action.''

Appellant earnestly insists that there is no satisfactory evidence of a settlement having been made, but a reading of the testimony makes it perfectly apparent that such was the case. Appellee's testimony concerning the making of the settlement is, of course, incompetent because he was testifying to transactions between him and J. Bryan Smith in connection with O. H. Pollard, an attorney, both Smith and Pollard being dead at the time of his testimony.

However, the testimony of Henry L. Spencer, taken in connection with the above quoted order of court, makes it perfectly apparent that this settlement was effected and that this order of court was the written memorial of the settlement. In addition to this testimony, Ervine L. Turner, the appellant, was asked this question and made this answer:

"Q. Were you present when settlement was made with Dr. Gambill and he withdrew his levy? A. I might have been. I had forgotten all about it until it was mentioned today.''

This question and answer show that appellant realized, when it was called to his attention, that some character of settlement had been reached between these parties.

Sometime later, the date does not appear in the record, the First National Bank of Louisville obtained a default judgment against Lizzie Strong, one of the children and heirs at law of William E. Gambill, on a note. Thereafter, Lizzie Strong filed suit against the First National Bank of Louisville in which this default judgment was set aside. The Hargis Bank and Trust Company was apparently substituted in this action in the place of the First National Bank of Louisville and the real contest was between it and Lizzie Strong.

In this action Lizzie Strong pleaded that she was the owner of a part of the above mentioned judgments in favor of William E. Gambill's administrator against the Hargis Bank and Trust Company and that her interest in said judgments was more than sufficient to satisfy her notes and she prayed that this interest in the judgments be set off against same. Appellee, Edward L. Gambill, was not a party to this litigation, either individually or as administrator.

The result of this suit was that Lizzie Strong was adjudged to be the owner of $1,257.11 of such judgments, which sum was set off against her notes and she was given judgment on her counterclaim against Ervine Turner, deputy banking commissioner and liquidating agent in charge of the Hargis Bank and Trust Company, in the sum of $77.99. Thereafter, Turner, as liquidating agent of the bank, caused executions to issue on the judgment in favor of the bank against appellee, Edward L. Gambill, and when these executions were issued, appellee filed this suit to enjoin the sheriff from collecting them, in which judgment was rendered in favor of appellee, granting such injunction and from this judgment appellants prosecute this appeal.

While there is some uncertainty in the evidence from the testimony of witnesses, it is apparent from court records that whatever dealings were had between appellee and the other heirs as to the judgments in favor of the administrator against the bank took place after the closing of the bank and not before. Aside

from the evidence along this line, appellee's testimony that the purpose of permitting Lizzie Strong to retain one-fourth interest in the judgments was to enable her to set it off against notes due by her to the Hargis Bank is inconsistent with any other conclusion. In addition thereto, the written assignment between A. L. Gambill, Jr., and the other heirs at law evidences the fact that all of them apparently considered they had an interest in the judgments at that time, which was after the bank closed.

The evidence as to assignment of these judgments in favor of the appellee as administrator of William E. Gambill, to himself, individually, is rather hazy and indefinite. This is natural as some years elapsed between such dealings and the trial of this case. Only one writing or assignment in connection with the judgments appears and that is a writing executed between all of the above named heirs at law of William E. Gambill by which Alfred Gambill, Jr., released to the other heirs at law his one-seventh interest in the judgments and by which there was set apart and given to him $518 of the deposit to the administrator's credit in the bank.

Appellee claims that all of the other heirs at law, except Lizzie Strong, agreed for him to have the benefit of the judgments against the bank in consideration of the fact that he paid out of his own pocket in behalf of the estate something like $4,000 in debts and costs advanced in litigation, but does not file any written assignment executed by these heirs to him. He says that he knows that he had written assignments from Charles Gambill and Elvira Rose, but that he had a new secretary who apparently could not find them. He says that Lizzie Strong was entitled to *her part* of the judgments. In a deposition given by appellee in the case of Mrs. Strong against the First National Bank of Louisville, above referred to, he testified that she was entitled to some interest in the judgment, but that he did not remember what the interest was.

From the testimony of Henry L. Spencer, however, it appears rather certain that such an agreement was made, namely, that appellee and his sister, Lizzie Strong, were to have the benefit of the judgments. This witness testifies fully as to a meeting in his offce, where the final settlement along this line was made by the

heirs and that the interest retained by Lizzie Strong was one-fourth of the amount of the judgments, this being done in order to enable her to offset this one-fourth interest against debts owing by her, individually, to the bank.

So far as we are able to ascertain from the record, none of the heirs at law, whose interests in the judgments appellee claims were assigned to him, were parties to the action of A. H. Hargis v. Lee Combs, etc., above mentioned, in which the order relied on by appellee as a settlement was entered. Neither was Mrs. Lizzie Strong a party to this action.

Appellant contends that the court erred in permitting the introduction in evidence of the order of settlement above quoted in the case of A. H. Hargis against Lee Combs, Sheriff, et al., because it was not shown what the issues were in that case or that the parties were before the court and that therefore the court could not determine whether or not it would operate as an estoppel or as res judicata.

He also contends that even if appellee acquired title to these judgments, such acquisition, if any, being after the closing of the bank, he did not have the right to set off these judgments in favor of himself as administrator against the judgments on which he was liable, as an individual, and that if the liquidator of the bank made such agreement it was void as being a preference under Kentucky Statutes, Sec. 165a-17.

Appellants' first contention, as above, seems to have no merit for the reason that the order above quoted, in the case of A. H. Hargis against Lee Combs, Sheriff, etc., recites that the deputy banking commissioner and appellee had a controversy between themselves by cross-petition and this order evidences a complete settlement between them by which the judgment amounting to $1,864.04 in favor of the bank against appellee was set off and satisfied. In addition thereto, as indicated above, it is apparent from the other evidence that some agreement of this kind was made between the parties. It is not necessary to determine whether under the circumstances this order or judgment would operate as res judicata. A settlement was made between the parties by which the judgment in favor of the bank against appellee was satisfied. The plaintiff's cause of action

was based on a plea of settlement, not on a plea of res judicata.

We also conclude that the second contention, namely, that the liquidator of the bank had no authority or right to make such a settlement, is unsound. At the time of the making of this settlement William E. Gambill's administrator had executions levied on the bank's property, which so far as this record goes, might, or might not, have constituted a valid prior lien.

In fact, sale had actually been made under the executions. The liquidator of the bank under these circumstances settled the matter by setting off this judgment against the bank against the one in favor of the bank against appellee, or, rather, by crediting its judgment against appellee by the amount of the administrator's judgment against the bank. We see no reason why this was not a right and proper action on the part of the authorities in charge of the bank as they were therefore enabled to go ahead with the highly advantageous sale of bank property on which these executions were levied.

The question is presented as to the right of the administrator to use this judgment in favor of the administrator against the bank in this manner and set it off against a judgment owing by him individually to the bank.

An administrator may make such disposition of assets in his hands, including the assignment or transfer of a judgment, as he desires to make, but is of course, subject to liability on his bond if he acts improperly. He had the right to assign this judgment and the transaction here amounts to no more than that. It was an oral or equitable assignment of the judgment to the bank and this is recognized as a good assignment in this state. In the case of Brown & Bro. v. Lapp et al., 89 S. W. 304, 28 Ky Law Rep. 409, in speaking of a judgment, this court said:

> "While not assignable by statute, so as to vest the legal title in the assignee, it is nevertheless a chose subject to sale and equitable assignment, and one that may be assigned by parol as well as by written contract. Gray v. Briscoe, 6 Bush 687; Newby & Taylor v. Hill & Million, 2 Metc. 530."

No heirs at law or distributee of William E. Gambill's estate had any interest in the judgment which could be assigned. This judgment was owned by and vested in the administrator and he alone had the right to assign or transfer it and having done so, the only remedy of a distributee of the estate is on the administrator's bond.

The matter that precipitated this litigation was, of course, the action of the Breathitt circuit court in permitting Lizzie Strong to set off a one-fourth interest in these administrator judgments against her notes to the bank. As this record stands, we are unable to see any possible principle of law by which this was done, as the administrator was vested with title to this judgment, which he had previously assigned by oral assignment to the bank. However, the judgment in that case is not properly before us and neither is the entire record so we are therefore prevented from making any binding decision as to the correctness thereof.

The final conclusion of the whole matter is that appellant and appellee reached a settlement between themselves which resulted in a satisfaction of the judgment against appellee on which the execution involved in this case was issued and this being the case, the judgment being satisfied no right existed on appellants' part to have the execution issued thereon. This being true, the lower court properly enjoined the levy of the execution and the judgment is therefore affirmed.