CASE 69—PETITION EQUITY—NOVEMBER 13.

# Wicks Bros. v. McConnell.

APPEAL FROM BREATHITT CIRCUIT COURT.

1. UNRECORDED MORTGAGES—ATTACHMENT LIENS—PRIORITY.—The lien of an attachment creditor acquired by a levy on property covered by an unrecorded mortgage, of which the creditor had no notice, is superior to the mortgage if his debt was created after the execution of the mortgage.

EDWARD W. HINES FOR APPELLANTS.

1. An unrecorded mortage or a bond for title has precedence over a lien created by execution or attachment where actual notice has been given the creditor before the sale under the execution or attachment. Baldwin v. Crow, 86 Ky., 679; Schmidt v. Carter, 95 Ky., 4.

2. A mortgagee who takes a mortgage to secure a precedent or pre-existing debt is not a purchaser without notice. Drake v. Elman, 80 Ky., 434; Merritt v. Northern R. R. Co., 12 Barb., 605; Webster v. Vansteenbeigh, 46 Barb., N. Y., 211; Perry on Trusts, page 218; Wood v. Robinson, 22 N. Y., 654; Carey v. White, 52 N. Y. 138; Wells, Fargo & Co. v. Smith, 2d Utah, 39; Woodward v. Newcombe, 12 Ky. Law Rep., 140.

3. As between persons having only equitable interests, priority in time gives the better equity. Newby, &c. v. Hill, 2d Met., 533.

J. M. BENTON AND J. B. MARCUM ON SAME SIDE.

J. J. C. BACH FOR APPELLEES.

1. Appellee became the creditor of Valley without notice of appellant's claim to the property, and became such creditor by reason of their failure to have their mortgage recorded. He was induced to part with his money by reason of the fact that there were no record liens on the property of the Valleys, and his attachment lien is a prior equity to that of the unrecorded mortgage of appellants. Barney & Smith Co. v. Hart, Receiver, 8 Ky. Law Rep., 223; Geer v. Church & Co., 13 Bush, 430; Vaughn v. Hopson, 10 Bush, 337; Hereford v. Davis, 102 U. S., 235; Baldwin & Co. v. Crow, 86 Ky., 679; Lane v. Robinson, 18 B. M., 623.

Wicks Bros. v. McConnell.

.JUDGE DuRELLE DELIVERED THE OPINION OF THE ;COURT.

In August, 1893, appellants, Wicks Bros., sold·to ·Valley & Son some $1,400 worth of machinery, and the latter firm ·executed an instrument, such as in the case of Baldwin & :Co. v. Crow (86 Ky.; 680), and other cases has been held to have the effect of a mortgage back to the vendor to secure the unpaid purchase money. This instrument was not recorded. For the purpose of paying the freight on the machinery and putting it in running order, Valley & Son obtained a loan from appellee, McConnell, of some $475, representing, as claimed by him, that they were the absolute owners of the property, and that the title thereto was unencumbered. He further claims that he examined the records in the county clerk's office in search of liens against the property, and failed to find any evidence of the existence of any lien; that Valley & Son, at the time, offered to give him a mortgage, which he thought it unnecessary to take, as they were abundantly solvent, if they were the owners of the property. His debt not being paid at maturity, and Valley & Son in the meantime having become indebted to other parties, he instituted an attachment suit, and had his attachment levied upon the property in question. McConnell's attachment and an attachment sued out by Stidham, who is a cross-appellant here, were the first levied of several attachments issued about the same time. It appears that while these suits were pending, Wick Bros. instituted a suit to enforce their lien for the unpaid purchase money, to which suit McConnell and Stidham were made parties on their petition, and their attachment suits, as well as the suits of other attaching creditors, were consolidated with it.

Before the filing of the suit by Wicks Bros., Valley & Son, during the pendency of the attachment suits, executed a mortgage to Stidham, to secure his and McConnell's claims. The attachments were subsequently sustained, and McConnell's claim adjudged to be prior in lien to that of appellants. Stidham's claim having been created prior to the purchase of the property by Valley & Son, was adjudged inferior.

Section 496, Kentucky Statutes, being the same as section 10, chapter 24 of the General Statutes, which provides, "No deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration without notice thereof, or against creditors, until such deed shall be acknowledged or proved according to law and lodged for record," has been frequently construed by this court; and, as said by Judge Lindsay in Low, &c., v. Blinco (10 Bush, 334), the decisions thereon are singularly inconsistent with each other. Without reviewing those cases—which has been done in the case last referred to, and in Baldwin & Co. v. Crow (86 Ky., 680)—it may be said that, in the case last named, which is the latest authoritative utterance of this court upon the subject, a distinction was clearly recognized between the position of an execution or attachment creditor without notice of an unrecorded mortgage lien, whose debt was created antecedent to the creation of the lien, and the position of one whose debt was created subsequently. Said Judge Lewis in that case:

"If the inquiry whether, by that section, creditors generally were intended to be affected by notice of such conveyances and transfer of property to debtors in the same way

and to the same extent as purchasers, was an original one, there would, looking alone to the language used, be some difficulty in reaching a satisfactory conclusion. But there is no reason whatever that a creditor, whose debt has been created prior to the conveyance, as was that of appellee, Crow, and who has not been defrauded or injured thereby, should occupy a better attitude than a purchaser with notice."

It may be said that in that opinion is to be found the first intimation of such a distinction; but, on the other hand, the distinction is there clearly indicated, and is, in our judgment, right and equitable. The holder of an antecedent debt is in no wise defrauded by not being permitted to subject to the payment of his debt property subsequently acquired by his debtor, which is subject to a lien. Moreover, in none of the cases to which we have been referred, in which the holder of a pocket lien has been held, to have a claim superior to an execution or attachment creditor, does it appear that the latter's debt was created subsequent to the creation of the lien. And while we desire to adhere strictly to the decision and reasoning of the court in the Baldwin case, *supra*, we are not inclined to push the doctrine further than we are required by the language of that opinion in support of secret liens as against creditors whose debts were created, or may reasonably be supposed to have been created, upon the faith of the property being, so far as they could by any possibility discover, unencumbered. If this be not the construction, then the language of the statute "or against creditors" is entirely nugatory There must be some class of creditors to which this language applies. The law gives to

the execution or attachment creditor a lien. The law also provides that a mortgage shall not affect him, except from its recording; and equity and good conscience do not require the court to disregard the will of the Legislature, and inflict upon creditors whose equity is superior to that of the mortgagee the evils which the statute was designed to restrain.

In Barney & Smith Mfg. Co. v. Hart (8 R., 227), a case which was distinctly held not overruled by the Baldwin case, it was said:

"Appellant had made its vendee the ostensible owner; had received more than half the purchase money, and when the cars have been transferred to an adjoining State and placed upon the track of the railroad company, the appellant, with this evidence of the lien in its pocket only, is now insisting that no title ever passed to its vendee, or that it has a prior equity against the claims of creditors. To so hold would be to disregard the plain provisions of the statute enacted to prevent fraud and protect the rights of creditors and purchasers, and, as said by this court in the case of Greer Church & Co., 13 Bush, 430, the title in such cases will be treated as being where the nature of the transaction requires it should be."

Time and again it has been held by this and other courts on grounds of public policy that secret liens were not to be favored. As said by Judge Pryor in Schmidt v. Carter (95 Ky., 5):

"Courts of equity can not be too careful in guarding the rights of *bona fide* purchasers and creditors against hidden liens, or such as exist only in the contemplation of the par-

ties, and it should be made to appear from the terms of the instrument itself that a lien has in fact beeen created."

And again, on page 6:

"Hidden liens, or such as usually arise when the debtor's property is about to pass from him, even if containing all the requisites of a mortgage, are looked upon with suspicion, and courts of equity should be reluctant to ignore the claims of *bona fide* creditors, unless such liens are clearly established."

This doctrine we believe to be a salutary one. On the one hand, the unrecorded lien is upheld as against creditors who can not be presumed to have given credit upon the faith of the property held in lien. On the other hand, creditors who may be presumed on such faith to have given credit are protected as against the secret lien in the rights which they secure by their diligence in the levy of their execution or attachment. As indicated by Judge Lewis in the Baldwin case before referred to, if the inquiry were an original one we might reach a different conclusion as to the meaning of the statute in regard to creditors generally; but as to antecedent creditors the question has undoubtedly been considered as well settled.

For the reasons indicated, the judgment is affirmed on the original and cross appeal.