### Mason & Moody v. Scruggs.

(Decided January 30, 1925.)

Appeal from Logan Circuit Court.

1. Pledges—Transaction Between Landlord and Tenant Held to Constitute a Pledge.—Transaction, by which tenant delivered tobacco to landlord on condition that he would sell and apply proceeds on tenant's indebtedness and turn over balance if any to him, constituted a valid pledge of tobacco to secure landlord's debt.

2. Pledges—Tenant's Pledge of Tobacco to Landlord Not Objectionable Because Oral.—That tenant's pledge of tobacco to secure his debt to landlord was oral did not render it objectionable.

3. Chattel Mortgages—Landlord Securing Valid Pledge of Tenant's Tobacco Held Entitled to Priority Over Mortgagee in Proceeds of Tobacco—"All Creditors."—Landlord, who secured a valid pledge of tenant's tobacco crop to secure a prior indebtedness prior to recording of defendants' mortgage thereon, was entitled to priority over defendants in proceeds of tobacco, "all creditors," as used in amendment of 1916 to Ky. Stats., section 496, providing that no debt or mortgage conveying legal or equitable title to real or personal estate shall be valid against creditors without recording, meaning subsequent creditors.

4. **Landlord and Tenant—Landlord Held to have Lien by Virtue of Pledge to Secure Entire Indebtedness of Tenant.**—Landlord, who secured a valid pledge of tenant's tobacco to secure a prior indebtedness, had a lien by virtue of such pledge to secure entire indebtedness.

E. J. FELTS for appellants.

S. R. CREWDSON and COLEMAN TAYLOR for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming on the original and reversing on the cross appeal.

In September, 1921, E. J. Allen was indebted to the appellee, Scruggs, in the sum of $1,667.53. Whether or not Scruggs at this time had a landlord's lien to secure this indebtedness under section 2323 of the Kentucky Statutes on a certain crop of tobacco, part of which had been raised by Allen as a tenant of Scruggs on the latter's land, and part of which had been raised on a farm, the paper title of which was in Allen, we do not deem it necessary to decide. The evidence shows that during this month Allen delivered the tobacco to Scruggs on condition that Scruggs should sell it, apply the proceeds as far as they would go to the liquidation of his indebtedness to Scruggs and turn over the balance, if any, to him. It further appears that in July previous, Allen had mortgaged his part of this tobacco to the appellants to secure them for supplies theretofore sold him by them on credit, and for future advances. This mortgage was not recorded until October 28, 1921, prior to which time appellee had no notice, actual or constructive, of the same. In January, 1922, the tobacco was sold, and then a dispute arose between appellants and appellee as to which one was entitled to priority in the proceeds of the sale, and this is the question which is here for decision.

The transactions between appellee and Allen in September constituted, as between them, a valid pledge of the tobacco to secure appellee's debt. Hamilton v. Wagner, 2 A. K. Marsh. 331, Bush v. Utley's Admr., 13 Ky. Law Rep. 541; Meguiar v. Thomas, 19 Ky. Law. Rep. 1003, 42 S. W. 846; 31 Cyc. 787, *et seq.* That the pledge was oral, is not objectionable. Sanders v. Davis, 13 B. Monroe, 432; 31 Cyc. 796. But it is urged that the pledge being given to secure an antecedent indebtedness, the appellee cannot hold it as against appellants' prior mortgage, although the same was unrecorded. See

Schuster v. Jones, 58 S. W. 595, 22 Ky. Law Rep. 568. Whatever may have been the rule heretofore, we now regard this question as concluded by section 496 of the statutes. Prior to 1916 this section read as follows:

> "No deed or deed of trust or mortgage, conveying a legal or equitable title to real or personal estate, shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed (or mortgage) shall be acknowledged or proved according to law and lodged for record."

As stated in the case of Jewell v. Cecil, 177 Ky. 822, 198 S. W. 199, this court, under this statute as above quoted, frequently held that an unrecorded mortgage or a pocket lien was superior to that of an attaching creditor. It was thus held that, notwithstanding the statute, court of equity, as between parties holding equities against the property, would give precedence to the older equity. However, a distinction was clearly recognized between the position of an execution or attachment creditor without notice of an unrecorded lien whose debt was created antecedent to the creation of the lien, and the position of the one whose debt was created subsequently. Quite a little law was written around these principles, and it was felt that there was some confusion and at times some injustice done by reason of their application. In 1916 the legislature amended the foregoing statute by adding thereto the following:

> "The word 'creditors' as used herein shall include all creditors irrespective of whether or not they may have acquired a lien by legal or equitable proceedings or by voluntary conveyance."

We have, in this case, presented to us squarely, for the first time since its passage, the effect to be given to this amendment to the statute. After a careful consideration of the matter, with special reference to the evils sought to be remedied and the evident purpose of the legislature in passing this amendment, we have come to the conclusion that the expression "all creditors" therein means subsequent creditors, whether they be secured or unsecured and such antecedent creditors who at some time prior to the recording of the mortgage or deed of trust have secured some equity in the property.

Hence the fact that Scruggs was an antecedent creditor will not affect his rights as against the appellants' unrecorded mortgage, and having secured a valid pledge prior to the recording of appellants' mortgage, appellee must be given priority over appellants. If appellants are injured in this, it is their own fault. They could have promptly recorded their mortgage and preserved their rights, failing which, they must take the consequences.

Therefore the judgment of the lower court in giving the appellee a priority over appellants in the proceeds of the tobacco is correct, and is affirmed on the original appeal.

However, the lower court adjudged appellee a priority to the extent of only $1,365.62, though giving him judgment against Allen in the sum of $1,667.53, the amount of the latter's indebtedness at the time of the pledge. In this, the court was in error as appellee had a lien by virtue of his pledge to secure the entire indebtedness. Therefore, on the cross-appeal of appellee, the judgment is reversed with directions to enter a judgment giving appellee a priority to the extent of his judgment against Allen.

Judgment affirmed on the original appeal and reversed on the cross-appeal.