## General Motors Acceptance Corporation v. Sharp Motor Sales Company et al.

(Decided January 21, 1930.)

(As Modified, on Denial of Rehearing, March 18, 1930.)

SANDIDGE & SANDIDGE for appellant.

ALBERT B. OBERST, LOUIS I. IGLEHEART and E. B. ANDER-
SON for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The General Motors Acceptance Corporation insti-
tuted an action in equity against the Sharp Motors Sales
Company and others to enforce a superior lien upon sev-
eral automobiles. The Sharp Motor Sales Company had

made an assignment for the benefit of its creditors, and the assignee was made a party defendant. The National Deposit Bank of Owensboro and the Owensboro Warehouse Company were made defendants to the action and called upon to disclose whatever interests, liens, or claims they might have to the property in controversy. The First National Bank of Owensboro also was made a party because the money derived from an agreed sale of the automobiles had been deposited with it to be held subject to the rights of the respective parties as finally ascertained and adjudged. The foundation of the plaintiff's claim was several so-called trust receipts which the petition alleged were in effect chattel mortgages.

The National Deposit Bank filed an answer and cross-petition, in which it asserted a superior lien to the fund in controversy by virtue of a pledge of warehouse receipts for the automobiles which had been issued to the Sharp Motor Sales Company by the Owensboro Warehouse Company. It also sought to hold the warehouse company liable to it in the event its claim of superior lien by virtue of the warehouse receipts was not sustained. It averred that it had no knowledge or information concerning plaintiff's pocket mortgage on the automobiles described in the warehouse receipts, and that it was an innocent purchaser, and entitled to preference over plaintiff because plaintiff's chattel mortgage was not recorded. The Owensboro Warehouse Company and the First National Bank filed answers to the cross-petition, but, on the present appeal by the General Motors Corporation, no notice of them is necessary.

There was an agreed statement of facts showing that the Oakland Motor Car Company had executed and delivered to the General Motors Acceptance Corporation two separate bills of sale covering the motorcars in controversy; that these motorcars had been delivered to the Sharp Motor Sales Company; that upon receipt of the automobiles the Sharp Motor Sales Company executed and delivered to the plaintiff several promissory notes, and the trust receipts exhibited with the petition, and that no part of the notes had been paid. The correct motor number and serial number of each automobile was stated.

The automobiles involved had been delivered to the Owensboro Warehouse Company to be stored and warehouse receipts therefor were issued by it. This was done before the maturity of the notes given by the Sharp

Motor Sales Company to appellant. The trust receipt was in substance an acknowledgment that the automobiles received were the property of the General Motors Acceptance Corporation, and an agreement to take and keep them at the risk of Sharp Motor Sales Company, and to refrain from selling, lending, pledging, or otherwise disposing of the vehicles. It contained a number of covenants and conditions not necessary to enumerate. A promissory note was executed simultaneously for the portion of the agreed consideration for the cars not theretofore paid.

Upon the stipulated facts and the evidence heard the court adjudged a prior lien to the National Deposit Bank of Owensboro which exhausted the fund and left nothing for the plaintiff. It appeals from the judgment, insisting (1) that the court erred in adjudging a prior lien to the National Deposit Bank of Owensboro, because the trust receipts vested title in the appellant and the storage by the Sharp Motor Sales Company of the automobiles and a pledge of the warehouse receipts could not affect it, although the trust receipts were unrecorded; (2) and that, if not correct in its first contention, the appellant nevertheless had a lien on the cars superior to that of the bank for several reasons to be separately stated and considered.

1. Argument is advanced to the effect that the trust receipt occupies a different legal status from chattel mortgages. Numerous opinions are cited in which the character of security afforded by the trust receipts is expounded. In re A. E. Fountain, Inc. (C. C. A.) 282 F. 816, 25 A. L. R. 319; In re Ford-Rennie Leather Co. (D. C.) 2 F. (2d) 750; Century Throwing Co. v. Muller (C. C. A.) 197 F. 252; In re James, Inc. (C. C. A.) 30 F. (2d) 555. We are relieved of the necessity of considering the question, however, for the reason that plaintiff's petition proceeded expressly upon the theory that it held only a chattel mortgage and asserted a superior lien by reason thereof. It set up no other character of claim. The action was based upon and governed by the Kentucky rule to the effect that, whatever may be the name or form of a transaction, when it is designed to hold personal property as a mere security for a debt, it is regarded as a chattel mortgage. Fry Bros. v. Theobald, 205 Ky. 146, 265 S. W. 498; Wicks Bros. v. McConnell, 102 Ky. 435, 43 S. W. 205, 20 Ky. Law Rep. 84; Welch v. National Cash Register Co., 103 Ky. 30, 44 S.

W. 124, 19 Ky. Law Rep. 1664. And, since the instrument was not recorded, it was invalid against a bona fide purchaser, or creditor without notice, Ky. Stats., sec. 496. If the National Deposit Bank had a valid pledge of the warehouse receipts taken without notice of the unrecorded mortgage, and for value, its lien was undoubtedly superior to that of the appellant. Starr Piano Co. v. Petrey, 168 Ky. 530, 182 S. W. 624; Mason, etc., v. Scruggs, 207 Ky. 66, 268 S. W. 833.

2. It is argued that the warehouse receipts held by the National Deposit Bank did not sufficiently identify or describe the automobiles to create a lien thereon by a pledge of the receipts. The vice assumed to exist in the warehouse receipts is that arbitrary numbers were inserted therein which were not the motor numbers or serial numbers of the automobiles. The warehousemen statute (Ky. Stats., sec. 4969), requires a warehouseman, upon demand of the owner, to issue a receipt for the property stored, setting forth the quality, quantity, kind, and description thereof, if known, and which shall be designated by some mark, and which receipt shall constitute evidence in any action against the warehouseman. The warehouse receipts involved in this case were alike, except as to serial number and description of the property stored, and were in this form:

"No. B. 11375.

"Warehouse Receipt

"Owensboro Warehouse Company,

Incorporated.

"Owensboro, Ky. 4/11/1927.

"Received from Sharp Motor Sales Co., of ————, one Oakland Landau Sedan, No. 148916, to be held by Owensboro Warehouse Company and to be delivered only on return of this certificate and payment of charges of $3.00 per month or fraction thereof. This receipt is issued and received with the understanding and agreement that Owensboro Warehouse Company assumes no responsibility in case of fire or other accidents beyond their control.

"Owensboro Warehouse Company,

"Per Hugh P. Aud."

No difficulty in identifying the automobiles covered by the warehouse receipts was encountered in this instance. They were the only ones in the warehouse answering to the general description contained in the receipts. Upon presentation of the receipts to the warehouseman, he readily identified the cars and upon legal demand delivered them to the holder of the receipt. It cannot be said therefore, that the description was insufficient when it afforded ample identification of the property in storage, and misled no one.

It is insisted, nevertheless, that the property stored must be described in the warehouse receipt with the same particularity that is required in a chattel mortgage. The description of the property in a chattel mortgage must be sufficiently definite and certain to enable the public in general to identify the property. Hauseman Motor Co. v. Napierella, 223 Ky. 433, 3 S. W. (2d) 1084.

Obviously a different rule obtains as to the description necessary in a warehouse receipt. The latter is sufficient when it identifies the property in the warehouse, or furnishes sufficient data for the warehouseman to ascertain and deliver the property represented by the receipt. See section 4777, Ky. Stats.; 40 Cyc. 410. The distinction is a sound one based upon the essential differences in the character of the two transactions, the purposes to be subserved, and the persons to be protected. Cf. Commercial National Bank v. Canal Louisiana Bank, 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417. Ann. Cas. 1917E, 25, 29.

But it is further argued that, although the descriptions in the warehouse receipts were sufficient and the cars were properly identified, the pledgee of the receipts did not obtain a lien because they were not indorsed in blank or otherwise to the bank. Section 4770 Ky. Stats. The answer and cross-petition of the National Deposit Bank contained an allegation that the Sharp Motor Sales Company indorsed each of the warehouse receipt in blank on the back thereof and transferred each of them to the defendant National Deposit Bank of Owensboro as collateral security for the payment of the note, and that it was the owner and holder thereof in the regular course of business. This allegation was not denied by appellant, and the argument advanced is without basis in fact when an averment to the contrary stands admitted. Furthermore, one of the directors of the National Deposit Bank testified that the warehouse receipts were each indorsed

to the bank in the regular course of business, and held by it as collateral security.

It is furthermore insisted that the bank had knowledge that the description in the warehouse receipts was incorrect in so far as the number was concerned, and that it knew the correct numbers of the automobiles, and was thus aware of appellant's lien by reason of handling the transaction as correspondent when the notes and trust receipts were executed. It seems that sight drafts were drawn on the Sharp Motor Sales Company with bills of lading and trust receipts attached, and, when the drafts were paid and the notes and trust receipts executed, the bills of lading were delivered to the Sharp Motor Sales Company. The transaction was handled through the bank by one of its officers. It is not developed whether the officer handling the transaction had any knowledge of the contents of the receipts, made any record of the facts, or had any occasion to notice the description of the cars.

It is argued that the handling of that transaction constituted notice to the bank, and therefore it was not an innocent purchaser of the pledged warehouse receipts. The bank alleged in its answer and cross-petition that it did not have notice of the lien of plaintiff, and the allegation was not denied. It stood admitted by the pleadings that the bank had acquired a lien on the cars through a pledge to it of the warehouse receipts, without notice of appellant's lien, and it is not necessary to determine whether the transaction in question constituted notice to the bank. The admission in the pleadings, by failure to deny the averment mentioned, was controlling on the court in that matter. Wright v. Wheat, 224 Ky. 386, 6 S. W. (2d) 458.

Argument is advanced to the effect that the appellant was entitled to rely upon denials to be found in the pleadings of the Owensboro Warehouse Company in response to the cross-petition of the National Deposit Bank of Owensboro against it. The propriety of the proceeding against the Owensboro Warehouse Company is not before us. We are concerned solely with the respective rights of the appellant and the National Deposit Bank of Owensboro as to priority in the payment of the fund involved. The issues between the appellant and the bank were not affected in any way by the cross-action between the other defendants in which the appellant had no interest. Indeed, it may be doubted

whether the collateral controversy was appropriate in this action for a determination of the rights of the various claimants in particular property. Cf. Civil Code of Practice, sec. 96, subd. 3; Consolidated Coach Corp. v. Burge, 231 Ky. 718, 22 S. W. (2d) 108. The doctrine of inurement as applied to pleading has never been carried to the extent of requiring a court to search collateral pleadings in an independent cross-action between other parties to ascertain or determine the issues between adversary litigants in the main action. There was nothing in common between appellant and the warehouse company. Indeed, in some respects, their interests were antagonistic. It would redound to the benefit of the warehouse company for the bank to sustain its claim of priority as against the appellant. When one defendant interposes a defense that is purely personal to him, it does not aid or affect a codefendant or prevent the court from rendering judgment against other defendants who have not made defense. Civil Code of Practice, sec. 370. But if a defense be made by one of several defendants which defeats or destroys the cause of action, obviously such a defense inures to the benefit of all against whom the cause of action is asserted. Newman on Pleading and Practice, sec. 439, p. 575. The reason is that a judgment may not be rendered upon a cause of action which has been extinguished. Lash v. Harding, 6 J. J. Marsh. 451; Rouse v. Howard, 1 Duv. 32; Moore v. Shepherd, 189 Ky. 593, 225 S. W. 484; Le Moyne v. Anderson, 123 Ky. 584, 96 S. W. 843, 29 Ky. Law Rep. 1017; Williams v. Rogers, 14 Bush 776; Tackett v. Green, 187 Ky. 49, 218 S. W. 468; Turner v. Commonwealth, 171 Ky. 304, 188 S. W. 404; Whitney v. Whitney, 5 Dana 331; Dehart v. Wilson, 6 T. B. Mon. 577; McGowan v. Maccoun, 3 A. K. Marsh. 151; Brown v. Warner, 2 J. J. Marsh. 38. The right of priority between the appellant and the bank depended upon the determination of the issues between them, and, if appellant failed to present an issue which affected its rights, no one else could present the question for it. 31 Cyc. 139; Joseph v. Lyon, 9 Ky. Law Rep. 324; Meffort v. Calloway, 10 Ky. Op. 852, 1 Ky. Law Rep. 406 There is one other instance in which the allegations of a pleading may be supplemented by averments contained in similar pleadings of another party. Where several plaintiffs are claiming liens upon, or rights against, the same property, of a single defendant, and the actions are consolidated, the petitions may be read together and consid-

ered as one for the purpose of supplying the essential averments. Van Cotzhausen v. Barker, 154 Ky. 624, 157 S. W. 1093; Daugherty v. Bell National Bank, 175 Ky. 513, 194 S. W. 545. But manifestly none of these cases or the reasons upon which they are rested apply to a situation like that presented here. The court must determine from the pleadings presented by the parties for that very purpose the issues between the appellant and the bank respecting their relative rights in the property involved.

It is finally insisted, however, that, if not correct in any of the contentions thus far indicated, the appellant was nevertheless entitled to priority because the bank was a general creditor who had secured no specific lien on the mortgaged property. If the National Deposit Bank was only a general creditor without a lien, an interesting question would be presented as to the proper construction of section 496, Kentucky Statutes. See In re Watson (D. C.) 201 F. 962; In re Frost (D. C.) 9 F. (2d) 128; In re Ducker (D. C.) 133 F. 771; Id. (C. C. A.) 134 F. 43; Dolle v. Cassell (C. C. A.) 135 F. 52, reversed in York v. Cassell, 201 U. S. 344, 26 S. Ct. 481, 50 L. Ed. 782; In re Doran (D. C.) 148 F. 327, reversed (C. C. A.) 154 F. 467; Crucible Steel Co. v. Holt (C. C. A.) 174 F. 127; Id., 224 U. S. 262, 32 S. Ct. 414, 56 L. Ed. 756; Mason, etc., v. Scruggs, 207 Ky. 66, 268 S. W. 833. But the bank was not a mere general creditor. It was a pledgee for value, in the regular course of business, without notice, and it thereby obtained a lien on the property represented by the warehouse receipts. 31 Cyc. 811; 21 R. C. L. sec. 16, p. 651; Farmer v. Etheridge, 69 S. W. 761, 24 Ky. Law Rep. 649; Collins v. Rosenhaim, 43 S. W. 727, 19 Ky. Law Rep. 1445; Newcomb v. Cabell, 10 Bush 460; Theis v. Canmann, 50 S. W. 1093, 22 Ky. Law Rep. 1097; Douglas v. People's Bank, 86 Ky. 176, 5 S. W. 420, 10 Ky. Law Rep. 243, 9 Am. St. Rep. 276.

It follows that the lower court did not err in adjudging priority to the bank as pledgee of the warehouse receipts to the extent of the debt to secure which the pledge was made.

The judgment is affirmed.